MISSISSIPPI VALLEY CAPITAL CO.

v.

The UNITED STATES.

No. 332–79L.

United States Claims Court.

April 6, 1983.

James Leon Young, Jackson, Miss., for plaintiff; Young, Scanlon & Sessums, P.A., Jackson, Miss., of counsel.

Patricia N. Young, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant; Charles W. Findlay, III, Washington, D.C., of counsel.

## MEMORANDUM OF DECISION

WHITE, Senior Judge.

The plaintiff, Mississippi Valley Capital Company, a Mississippi limited partnership, is the owner of a leasehold interest in an office building known as the 301 Building, which consists of a basement and five floors. The building undoubtedly derives its name from the circumstance that it is located at 301 North Lamar Street in Jackson, Mississippi.

The Federal Government, as a lessee under a succession of leases and lease supplements, has occupied space in the 301 Building for many years.

The specific lease involved in this action is Lease No. GS–04B–14297 ("the lease"), which was entered into effective January 15, 1972. The lease originally covered 46,-564.75 "net usable square feet of office and related space" in the 301 Building, at an annual rental rate of $4.75 per square foot. The lease was for a term of 5 years, from January 15, 1972, through January 14, 1977.

In a series of supplemental lease agreements, the Government's leasehold interest was increased: by 660 "net usable square feet of office space" on the fifth floor, effective January 31, 1972; by 1,200 "net usable square feet of space" on the fifth floor, effective October 1, 1972; by 690 "net usable square feet of space" on the fourth floor, effective August 1, 1972; and by 1,327 "net usable square feet of office space" on the fifth floor, effective October

1, 1973. By means of these four supplemental lease agreements, the leasehold was enlarged to a total of 50,441.75 "net usable square feet" of space.

On and after October 1, 1973, the Government was the only occupant of space in the basement and on the first, second, third, and fifth floors of the 301 Building. The Government also occupied most of the space on the fourth floor, but another tenant, the Mississippi Arts Commission, occupied some space on the fourth floor.

Effective January 15, 1977, by virtue of another supplemental lease agreement, the term of the lease was extended for an additional 2 years, from January 15, 1977, through January 14, 1979; and the annual rental rate was increased to $6.16 per square foot on the 50,441.75 "net usable square feet" of space then covered by the lease.

The Government's rental payments through the years were based on the rental rate per square foot provided for in the lease, as supplemented, multiplied by the number of square feet of "net usable space" covered by the lease, as supplemented.

The plaintiff contends that the Government, over a period of years, has actually occupied more square footage of space in the 301 Building than the Government paid for at the rental rate per square foot per annum provided for in the lease, as supplemented. Accordingly, the plaintiff is suing for the difference between the rental payments which the Government made and the amounts which (according to the plaintiff) were due on the basis of the space actually occupied by the Government.

On the other hand, the defendant has filed a counterclaim against the plaintiff, asserting that it paid more as rent for space in the 301 Building than was actually owing under the provisions of the lease between the parties.

The difference between the parties arises because the plaintiff's claim is based upon the space actually occupied by the Government, while the Government's counterclaim is based upon the contention that it was only obligated to pay for "net usable space" and the "net usable space" was less than the square footage on which the Government paid rent.

It has been mentioned previously that the lease, and its several supplements, granted the Government the right to use—and required the Government to pay rent on—a certain quantity of "net usable space" in the 301 Building. The term "net usable space" was defined as follows in paragraph 11 of the "Miscellaneous Provisions" of the lease:

11. DEFINITION OF NET USABLE SPACE. "Net usable space" is a term meaning the area to be leased for occupancy by Federal personnel and/or equipment. It is determined by:

a. Computing the inside gross area of the space by measuring from the normal inside finish of exterior walls, or the room side finish of fixed corridor and shaft walls, or the center of tenant separating partitions.

b. Making no deductions for the columns and projections enclosing the structural elements of the building.

c. Deducting from the gross area the following, including enclosing walls when applicable:

(1) Toilets and lounges

(2) Stairwells

(3) Elevators and escalator shafts

(4) Building equipment and service areas

(5) Entrance and elevator lobbies

(6) Stacks and shafts

(7) Fully enclosed convectors when the housing rests on the floor and each end abuts a column or wall.

(8) Corridors in place: If the corridor system in and outside the gross area does not provide ready access to all rooms required, a deduction for corridors will be made in an amount equal to 10% of the remaining gross area after deducting (1) to (7) above. The area of corridors within the gross area would apply against the 10% factor.

The controversy between the parties as to whether the Government's rental payments were too small (as contended by the plaintiff) or too large (as contended by the Government) first developed in 1977. At that time, the Government was the only occupant of the basement and the first, second, third, and fifth floors of the 301 Building, and the Government occupied most of the fourth floor. Another tenant, the Mississippi Arts Commission, occupied some space on the fourth floor. The lease at that time authorized the Government to occupy 50,441.75 "net usable square feet" of space.

A joint survey of the space occupied by the Government was made by personnel of the plaintiff and of the Government in October 1977. This survey disclosed that the Government was occupying a total of 51,786 square feet of space in the 301 Building (exclusive of toilets and lounges, stairwells, elevator and escalator shafts, building equipment and service areas, entrance and elevator lobbies, stacks and shafts, fully enclosed convectors, and corridors). It is inferred, and found, that this situation had continued since October 1, 1973, when a supplemental lease agreement increased the Government's leasehold interest in the 301 Building to 50,441.75 "net usable square feet" of space.

As the Government was paying rent on only 50,441.75 square feet of space in October 1977, the plaintiff demanded that the Government reduce its occupancy to 50,441.75 square feet of space.

After receiving the plaintiff's demand mentioned in the preceding paragraph, the Government reviewed the situation and concluded that it was entitled to apply, as to certain floors, especially the fourth floor, the 10 percent factor referred to in subparagraph c(8) of the definition of "net usable space," and that, on such basis, it was paying for more "net usable space" than it was occupying.

The Government's position was based on the circumstance that a few of the rooms occupied by the Government in the 301 Building—three rooms on the fourth floor were specifically mentioned during the testimony at the trial—were each contiguous on one side to a corridor and on another side to open space, and the only entrance to the room was from the open space. With respect to such a room, according to the Government, the "corridor system" did not "provide ready access" to the room.

The Government does not contend, with respect to any of the rooms mentioned in the preceding paragraph, that the room lacked ready access, or that access to the room, for the Government's purposes, would have been more convenient if it had been provided from the existing contiguous corridor or from a corridor constructed in the contiguous open space. Moreover, there is no evidence in the record that the Government ever complained to the plaintiff about the quality of the access provided to any room from contiguous open space, or about the failure to provide access from the existing contiguous corridor or from a corridor constructed in the contiguous open space.

It is inferred and found that ready access was provided to each of the rooms now under consideration, and that the Government's purposes in occupying each of these rooms would not have been facilitated to a substantially greater extent if access had been provided from the existing contiguous corridor or from a corridor constructed in the contiguous open space.

In addition, it will be noted that the pertinent lease provision authorized the application of the 10 percent factor only "[i]f the corridor system * * * does not provide ready access to all rooms required * * *." Although the syntax could be improved, the quoted material indicates that the 10 percent factor was to be applied only if the corridor system failed to provide ready access to all rooms which required direct access from the corridor system. For example—and the court does not hesitate to take judicial notice of this—it often happens that a government official (or even a judge) may wish to have visitors screened in an outer office by a secretary or receptionist before they gain admission to his or her own inner sanctum. In such a situation,

ready access from a contiguous corridor to the inner sanctum would be a disadvantage rather than an advantage. There is no evidence that any room requiring ready access from the corridor system for the Government's purposes lacked such access.

On considering all the evidence in the record, and the reasonable inferences to be drawn from it, it is determined and found that the 10 percent factor mentioned in paragraph 11–c(8) of the "Miscellaneous Provisions" of the lease was not applicable under the circumstances of this case, and that the Government occupied more "net usable space" in the 301 Building than it was authorized to occupy by the terms of the lease, as supplemented, and on which it paid rent. In particular, the Government, during the period beginning October 1, 1973, was occupying 51,786 square feet of "net usable space," whereas the Government was authorized to use, and paid rent on, only 50,441.75 square feet of "net usable space."

## CONCLUSION OF LAW

On the foregoing opinion and the facts, as found by the court, the court concludes as a matter of law and decides that the plaintiff is entitled to recover. The amount of the plaintiff's recovery will be determined in subsequent proceedings under Rule 42(c).

The court further concludes as a matter of law that the defendant is not entitled to recover on its counterclaim. The counterclaim will be dismissed after the conclusion of the proceedings under Rule 42(c).

IT IS SO ORDERED.

## FINDINGS OF FACT

1. (a) The Mississippi Valley Capital Company ("the plaintiff") is a Mississippi limited partnership, which maintains its principal place of business in Jackson, Mississippi.

(b) The plaintiff is the owner of a leasehold estate in and to an office building known as the 301 Building, which is located at 301 North Lamar Street in Jackson, Mississippi. The 301 Building includes a basement and five floors.

2. (a) The plaintiff is the successor in interest to a corporation that was known as the Mississippi Valley Corporation. When that corporation was liquidated sometime before January 11, 1977, its stockholders founded the plaintiff as a partnership, the assets of the corporation were transferred to the plaintiff, and the former stockholders of the corporation became proportionate owners of the plaintiff and its assets.

(b) The Mississippi Valley Corporation was the successor in interest to another corporation that was known as the 301 Corporation. At the time of the organization of the 301 Corporation, the Mississippi Valley Corporation owned a 25-percent interest in the 301 Corporation. Later, the Mississippi Valley Corporation acquired the remaining 75-percent interest in the 301 Corporation. After acquiring the entire ownership of the 301 Corporation, the Mississippi Valley Corporation caused the assets of the 301 Corporation to be transferred to the Mississippi Valley Corporation, and then liquidated the 301 Corporation.

(c) The principal asset transferred from the 301 Corporation to the Mississippi Valley Corporation, and from the Mississippi Valley Corporation to the plaintiff, was the leasehold estate in and to the 301 Building.

3. (a) The United States of America ("the defendant" or "the Government"), through its General Services Administration ("the GSA"), has for many years been a tenant in the 301 Building under various leases and supplements thereto.

(b) The space in the 301 Building occupied by the Government has been used principally by the Internal Revenue Service.

4. On January 13, 1972, the Government, through the GSA, executed Lease No. GS–04B–14297 ("the lease") for 46,564.75 "net usable square feet of office and related space" in the 301 Building at an annual rate of $4.75 per square foot. The lease was for a term of 5 years, from January 15, 1972, through January 14, 1977. The lessor was the 301 Corporation.

5. During the 5-year primary term of the lease, the lease was amended four times to add more space to the leasehold at the same annual rental rate of $4.75 per square foot, as follows:

(a) Supplemental Lease Agreement No. 1, between the Government and the 301 Corporation, effective January 31, 1972, increased the leasehold by 660 "net usable square feet of office space" on the fifth floor of the 301 Building.

(b) Supplemental Lease Agreement No. 3, between the Government and the Mississippi Valley Corporation, effective August 1, 1972, increased the leasehold by 1,200 "net usable square feet of space" on the fifth floor.

(c) Supplemental Lease Agreement No. 4, between the Government and the Mississippi Valley Corporation, effective August 1, 1972, increased the leasehold by 690 "net usable square feet of space" on the fourth floor.

(d) Supplemental Lease Agreement No. 8, between the Government and the Mississippi Valley Corporation, effective October 1, 1973, increased the leasehold by 1,327 "net usable square feet of office space" on the fifth floor.

6. The lease and the four supplements referred to in finding 5 comprised a total leasehold of 50,441.75 "net usable square feet" of space.

7. After Supplemental Lease Agreement No. 8, effective October 1, 1973, was entered into, the only other lessee in the 301 Building was the Mississippi Arts Commission, which occupied part of the fourth floor. The Government occupied most of the fourth floor, and it was the only occupant of space in the basement and on the first, second, third, and fifth floors.

8. Effective January 15, 1977, by virtue of Supplemental Lease Agreement No. 28 between the Government and the plaintiff, the lease was extended for an additional 2 years, from January 15, 1977, through January 14, 1979; and the annual rental rate was increased to $6.16 per square foot on 50,441.75 "net usable square feet" of space.

9. Paragraph 11 of the "Miscellaneous Provisions" of the lease provided in part as follows:

11. DEFINITION OF NET USABLE SPACE. "Net usable space" is a term meaning the area to be leased for occupancy by Federal personnel and/or equipment. It is determined by:

a. Computing the inside gross area of the space by measuring from the normal inside finish of exterior walls, or the room side finish of fixed corridor and shaft walls, or the center of tenant separating partitions.

b. Making no deductions for the columns and projections enclosing the structural elements of the building.

c. Deducting from the gross area the following, including enclosing walls when applicable:

(1) Toilets and lounges

(2) Stairwells

(3) Elevators and escalator shafts

(4) Building equipment and service areas

(5) Entrance and elevator lobbies

(6) Stacks and shafts

(7) Fully enclosed convectors when the housing rests on the floor and each end abuts a column or wall.

(8) Corridors in place: If the corridor system in and outside the gross area does not provide ready access to all rooms required, a deduction for corridors will be made in an amount equal to 10% of the remaining gross area after deducting (1) to (7) above. The area of corridors within the gross area would apply against the 10% factor.

\* \* \* \* \* \*

*General Provisions.*

\* \* \* \* \* \*

b. Space offered for lease to the Government must contain the required square foot net usable area as identified above, and upon delivery, the actual number of net usable feet of space delivered will be determined by mutual field measurement. Payment will be

made on the basis of actual measurement but not to exceed the amount required by the solicitation.

10. (a) As of October 1977, the Government was occupying and using a total of 51,786 square feet of space in the 301 Building (exclusive of toilets and lounges, stairwells, elevators and escalator shafts, building equipment and service areas, entrance and elevator lobbies, stacks and shafts, fully enclosed convectors, and corridors), as follows:

(1) 7,917 square feet of space in the basement;

(2) 8,872 square feet of space on the first floor;

(3) 9,298 square feet of space on the second floor;

(4) 9,288 square feet of space on the third floor;

(5) 7,158 square feet of space on the fourth floor; and

(6) 9,253 square feet of space on the fifth floor.

(b) It is inferred from the evidence, and found, that the Government occupied and used the 51,786 square feet of space referred to in paragraph (a) on and after October 1, 1973.

(c) The record is unclear as to whether the Government, before October 1, 1973, occupied more square footage of space in the 301 Building than the square footage of "net usable space" provided for in the lease, as supplemented.

11. After October 1, 1973, the Government paid the plaintiff (or its predecessor), at the rate per square foot prescribed in the contract, as supplemented, for 50,441.75 square feet of space.

12. A few of the rooms occupied by the Government in the 301 Building during the period involved in the litigation—three rooms on the fourth floor were specifically mentioned during the testimony at the trial—were each contiguous on one side to a corridor and on another side to open space, and the only entrance to the room was from the open space.

13. Sometime in 1977, the plaintiff discovered that the Government was actually occupying a total of 51,786 square feet of space in the 301 Building (exclusive of toilets and lounges, stairwells, elevators and escalator shafts, building equipment and service areas, entrance and elevator lobbies, stacks and shafts, fully enclosed convectors, and corridors), whereas the Government was paying rent on only 50,441.75 square feet of space. The plaintiff demanded that the Government reduce its occupancy to 50,441.75 square feet.

14. After receiving the plaintiff's demand, referred to in finding 13, the Government reviewed the situation and concluded that, in view of the condition referred to in finding 12, the Government was entitled to apply, as to certain floors, especially the fourth floor, the 10 percent factor mentioned in paragraph 11–c(8) of the "Miscellaneous Provisions" of the lease (see finding 9), and, on that basis, it was paying for more "net usable space" than it was occupying.

15. (a) In a letter dated December 5, 1977, and addressed to an official of the plaintiff, the GSA stated that it had made a "determination and/or decision that there is a total of 47,880 net usable square feet of space now being occupied by the Government at this facility [the 301 Building]." The GSA enclosed and requested the plaintiff to sign a new supplemental lease agreement establishing "a total of 47,880 net usable square feet of office space and related space under lease, [retroactively] effective January 15, 1977." The annual rental under the new supplemental lease agreement was to be $294,940.80, computed at the rate of $6.16 per square foot per annum on 47,880 net usable square feet of space. (This annual rental compared with the annual rental of $310,721.18, computed at the rate of $6.16 per annum on 50,441.75 net usable square feet of space, that had been agreed to by the parties in the then-current supplemental agreement effective January 15, 1977.)

(b) The plaintiff declined to enter into the supplemental lease agreement mentioned in paragraph (a) of this finding.

16. (a) The Government does not contend, with respect to any of the rooms referred to in finding 12, that ready access to the room was not provided from the contiguous open space, or that access to the room, for the Government's purposes, would have been more convenient if it had been provided from the existing contiguous corridor or from a corridor constructed in the contiguous open space.

(b) There is no evidence in the record that, with respect to any of the rooms referred to in finding 12, the Government ever complained to the plaintiff about the quality of the access to the room provided from the contiguous open space, or about the failure to provide access from the existing contiguous corridor or from a corridor constructed in the contiguous open space.

(c) It is inferred and found that ready access to each of the rooms mentioned in finding 12 was provided from the contiguous open space, and that the Government's purposes in occupying and using the room would not have been facilitated to a substantially greater extent if access had been provided from the existing contiguous corridor or from a corridor constructed in the contiguous open space.